**STATE of Minnesota, Respondent,**

v.

**Dexter Brian COGSWELL, Appellant.**

**No. CO–86–1341.**

Court of Appeals of Minnesota.

March 31, 1987.

Review Denied April 29, 1987.

Hubert H. Humphrey, III, Minn. Atty. Gen., Kathy Meade Hebert, Sp. Asst. Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka Co. Atty., Anoka, for respondent.

C. Paul Jones, Minn. Public Defender, James M. Burseth, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant, hospitalized under a statute providing for the indefinite commitment of persons acquitted of criminal charges by reason of mental illness, questions whether he is properly considered committed as mentally ill and dangerous under current law. Appellant also claims the trial court erred by failing to hold an evidentiary review hearing before determining his status, and he raises constitutional due process claims in that regard. We affirm.

## FACTS

Appellant Dexter Cogswell has a long history of criminal convictions, chemical abuse, and mental illness. In a 1973 trial for sexual assault, the trial judge found appellant had committed the charged acts but was not guilty by reason of insanity. The court ordered appellant committed to the Minnesota Security Hospital for safekeeping and treatment "until discharged by law or competent authority." This commitment was made pursuant to Minn.Stat. § 631.19 (1971) (repealed by 1979 Minn. Laws ch. 233, § 42).

Unlike the present civil commitment act, section 631.19 did not distinguish between kinds of commitments or institutions to be used for treatment, except to say that persons with "homicidal tendencies" must be committed to the Security Hospital. *Id.* All commitments under this statute were for an indefinite term. *Id.* A person could be discharged only upon order of the committing court, and then only if the court determined that "no person will be endangered by [the] discharge." *Id.*

In 1975, appellant was transferred to Anoka State Hospital. In 1979, he was sentenced to five years in state prison following his conviction for a sexual assault he committed while out on a pass. In 1981, he was paroled back to the Security Hospital. In November 1983, appellant's parole expired and he was transferred to St. Peter State Hospital.

In 1985, the Commissioner of Human Services petitioned for appellant's provisional discharge to a half-way house. However, because of changes in the law since appellant's commitment in 1973, it was necessary to determine which statutory standards governed appellant's discharge.

Commitments under section 631.19 were affected by adoption of Rule 20 of the

Minnesota Rules of Criminal Procedure in 1975, and the statute was repealed in 1979. Neither Rule 20 nor the civil commitment code that was in effect until 1982 [1] mentioned the standard for discharge of a person committed pursuant to section 631.19. The current commitment code, the Minnesota Commitment Act of 1982, Minn.Stat. ch. 253B, is similarly silent on section 631.19 commitments.

The 1982 act provides that a person committed as "mentally ill and dangerous" may not be transferred, provisionally discharged, or discharged by the Commissioner, but only upon recommendation of the majority of a special review board, based on the preponderant evidence presented at a hearing. Minn.Stat. § 253B.18, subds. 6, 7, 15 (1986). In contrast, a person committed as mentally ill may be transferred in the sole discretion of the Commissioner, and may be provisionally discharged or discharged in the discretion of the treating facility. *Id.* §§ 253B.14, 253B.15, subd. 1, and 253B.16, subd. 1 (1986).

The Commissioner submitted his discharge petition to the special review board. The board approved appellant's provisional discharge plan, but questioned its jurisdiction in the matter because appellant had never expressly been found to be mentally ill and dangerous. The board noted the original committing court's continuing jurisdiction and determined the case should be returned to that court. The parties stipulated to appellant's provisional discharge plan, and the trial court ordered its implementation as soon as space became available at the half-way house.

The trial court agreed with respondent State of Minnesota that appellant's circumstances are properly classified as those of one found mentally ill and dangerous. It further concluded that the appropriate way to make the determination is to construe the governing statutes as they have been amended since appellant's commitment in 1973, and not to hold an evidentiary hearing on appellant's current mental health

status. The court found significant to the issue the current statutory provision that

following the acquittal of the proposed patient for a crime against the person pursuant to a verdict of not guilty by reason of mental illness, the verdict constitutes evidence that the proposed patient is mentally ill and dangerous * * *.

*Id.* § 253B.18, subd. 1 (1986). Based on these conclusions, the court concluded the Commissioner has jurisdiction over appellant's ongoing commitment.

## ISSUE

Did the trial court properly find that appellant's status is that of a person committed as mentally ill and dangerous?

## ANALYSIS

■■■ The trial court found that current discharge procedures for persons committed as mentally ill and dangerous govern persons committed pursuant to section 631.19. We agree. The repealed statute created a commitment status with release conditioned only upon a finding of no danger. The evident legislative intent of section 631.19 is reaffirmed by the express language in the current statute providing that acquittal of a crime by reason of mental illness constitutes evidence that a proposed patient is mentally ill and dangerous. *Id.* § 253B.18, subd. 1. We are satisfied that any other application of the law would conflict with the 1973 statutory provisions on commitment procedures in cases of this kind.

We also reject appellant's assertion that this application of the statute conflicts with the manner in which his commitment has been treated in the past, including transfers out of the Security Hospital to state hospitals in Anoka and St. Peter without consideration by the special review board. Although chapter 253B does not permit such transfers for persons committed as mentally ill and dangerous, appellant's past treatment is not legally determinative, but merely a practice that may trace to the uncertainty as to how the 1982 act should

1. Minn.Stat. ch. 253A (repealed by 1982 Minn. Laws ch. 581).

be applied to him after repeal of section 631.19.

■ Appellant contends, however, that if the case is to be considered under the mentally ill and dangerous provisions, he is entitled to a hearing to determine his current status. Appellant relies on the Minnesota Commitment Act of 1982, which requires status review hearings for persons committed under the previous commitment act, Minn.Stat. ch. 253A. *See* 1983 Minn. Laws ch. 251, § 27; 1982 Minn.Laws ch. 581, § 26.

The trial court felt appellant was not committed under chapter 253A and was therefore unaffected by the 1982 mandate for a new hearing. The court concluded appellant's commitment should continue unless and until his release is authorized under procedures now applicable to mentally ill and dangerous persons. *See* Minn. Stat. § 253B.18 (1986).

The trial court's reasoning is sound. Chapter 253A governed release procedures between 1979 and 1982, but this does not change the fact that appellant was committed under another law. *See Warner v. State*, 309 Minn. 333, 244 N.W.2d 640 (1976). Under section 631.19 appellant was committed for an indefinite term; a person so committed cannot be released until it is determined that no person will be endangered by their discharge. This was the legislature's evident intent in 1973, and that intent is ratified and supported by the present statutory implication of dangerousness in persons committed pursuant to a verdict of not guilty by reason of mental illness. *See* Minn.Stat. § 253B.18, subds. 1, 15 (1986). Moreover, the current statute expressly excludes persons previously committed as mentally ill and dangerous under chapter 253A from the review hearing requirement. *See* 1983 Minn.Laws ch. 251, § 27.

■ Appellant further claims, however, that his constitutional right to due process was violated by the failure to hold an evidentiary hearing. The trial court rejected this claim on the basis of a United States Supreme Court case upholding the constitutionality of a District of Columbia statute that was identical to section 631.19. *See Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). The underpinning of *Jones* is that a person acquitted of a crime by reason of mental illness has already had a full constitutional hearing on his mental health by virtue of the verdict in the criminal case. *Id.* at 366–68, 103 S.Ct. at 3050–51. Here, cause for commitment was lawfully determined. The Constitution does not demand more than the hearings provided for in chapter 253B, and chapter 253B does not require a hearing for appellant. *Id.* In addition, *Jones* lends support to the trial court's determination that appellant was originally committed as a mentally ill and dangerous person. *See id.* at 364, 103 S.Ct. at 3049 (fact that person committed a criminal act indicates dangerousness; such concrete evidence may be at least as persuasive as any other predictions about dangerousness).

■ Appellant also alleges error in the trial court's determination that the Commissioner has jurisdiction over appellant's ongoing commitment. Because appellant's commitment is governed by chapter 253B, the trial court correctly determined that the Commissioner has authority over future proceedings. *See* Minn.Stat. § 253B.18 (1986). Still, there remain for these matters provisions of law perpetuating a role of the original committing court, which may include informal responses to reports, but which does not include a direct role in formal discharge proceedings. *See* Minn.R.Crim.P. 20.01, subd. 5 (trial court must be notified of any proposed institutional transfer, termination, discharge, or provision discharge). The rule also gives the prosecuting attorney the right to participate as a party in any proceedings concerning such proposed changes. *Id.* The committing court's supervision, however, does not disturb the determination that future proceedings for appellant's transfer or release must conform to section 253B.18.

## DECISION

The trial court properly determined appellant's status is that of a person committed as mentally ill and dangerous and appropriately made this determination without a commitment review hearing. Further commitment proceedings must comply with section 253B.18 and Rule 20 of the Minnesota Rules of Criminal Procedure.

Affirmed.